**FINA OIL AND CHEMICAL COMPANY, Appellant,**

v.

**PORT NECHES I.S.D., Jefferson County Education District and Nick Lampson, Tax Assessor–Collector for the Port Neches I.S.D. and Jefferson County Education District, Appellees.**

**No. 09–92–103 CV.**

Court of Appeals of Texas, Beaumont.

June 17, 1993.

Rehearing Denied Aug. 16, 1993.

**4** 

Michael R. Garatoni, Foster, Lewis, Langley, Gardner & Banack, San Antonio, Ron Patterson, Foster, Lewis, Langley, Gardner, Austin, for appellant.

Russell R. Graham, Calame, Linebarger, Graham & Pena, Austin, Glenn H. Steele, Jr., Provost, Sheldon, Steele, Hughes, Port Arthur, for appellees.

Before WALKER, C.J., and BURGESS and COLLEY*, JJ.

* Justice, Retired, Court of Appeals, Tyler, sitting by assignment pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

## OPINION

PAUL S. COLLEY, Justice (Retired).

### I. INTRODUCTION

On September 26, 1991, Appellant, Fina Oil and Chemical Company ("Fina"), brought suit against Appellees, Port Neches I.S.D. ("School District"), Jefferson County Education District ("Education District") and Nick Lampson ("Lampson"), Tax Assessor–Collector for the School District and Education District, in the 172nd District Court of Jefferson County, Texas. By its pleading, Fina sought a declaratory judgment that under a tax abatement contract[1] executed by Fina and the School District, Fina was entitled to an abatement of ad valorem taxes for the year 1991 on the property value of $14,770,400.00, representing 100 percent of the market value of Fina's "Cogeneration Power Unit and Asphalt Storage Tanks Project" consisting of a 35 megawatt cogeneration unit, and asphalt storage tanks and related improvements, hereinafter called ("Cogen Project"), all of which was a part of Fina's Port Arthur Refinery located in Jefferson County, Texas. Under the abatement agreement, the school district granted such tax exemption to Fina, limited by the language of the contract, and dated January 9, 1989 as follows:

> [A]ll ad valorem taxes ("Taxes") on Real Property improvements [in the eligible reinvestment zone] . . . generated solely by virtue of the construction of [Fina's Cogen Project], the fair market value of which is over and above the fair market value of $209,270,830.00 on January 1, 1987, are hereby abated in an amount of 100 percent of the value of such project during the period of its construction [not to exceed] two (2) years beginning January 1, from and after commencement of construction. Commencing with the first calendar year following completion of construction or two (2) calendar years from and after commencement of construction, whichever is

1. Executed pursuant to the Tex.Tax Code Ann. §§ 312.002, et seq. (Vernon 1992).

sooner, the abatement shall be in the amount of 100% of value for the next consecutive five (5) years. Real property taxes from the [reinvestment] Zone not attributable to the [Cogen Project] and those derived from Real Property, including realty improvements outside the [reinvestment] Zone, are not abated."

Following that paragraph, the abatement contract contains two (2) other conditions or circumstances under which the school district would be entitled to terminate the abatement contract and cancel the abatement or exemption, viz., (1) "FINA allows its ad valorem taxes owed to the [School District] to become delinquent and fails to timely and properly follow the legal procedures for their protest and/or contest" or (2) Fina breaches the contract, or violates any of the terms and conditions thereof and fails to cure such breaches or violations within sixty (60) days from the date the school district notifies Fina of the breach or violation.

In addition to its declaratory judgment action, Fina also sought injunctive relief against all appellees to enjoin them from collecting ad valorem taxes on the value of $14,770,400.00 of the Cogen Project for the 1991 tax year.

On November 15, 1991, the School District and Lampson filed a plea to the court's subject matter jurisdiction in this cause. The motion was grounded solely on Fina's alleged failure after "[receiving] a notice of appraised value [as required by TEX.TAX CODE ANN. § 25.19 (Vernon 1992)] indicating the exact amount of the exemption currently under dispute," to file a timely protest with the Jefferson County Appraisal Review Board. In short, appellees alleged that Fina's failure to exhaust its administrative review remedies destroyed the trial court's subject matter jurisdiction of this cause. Appellees' plea to the jurisdiction was heard on January 7,

1992, and on January 13, 1992, the trial court sustained that plea and dismissed the cause for lack of jurisdiction. We will reverse the judgment.

The court thereafter filed findings of fact and conclusions of law. The court found that Fina timely applied to the Jefferson County Appraisal District for a tax abatement exemption, that the Jefferson County Appraisal District on May 13, 1991 delivered to Fina a Notice of Appraised Value as required by section 25.19 [2]; that such notice indicated the amount of the tax abatement exemption which the Appraisal District had granted; and finally, that Fina "failed to file a timely notice of protest ... as required by section 41.44, Property Tax Code." The Jefferson County Appraisal Review Board conducted no hearing on the claims raised by Fina in the instant cause of action.

As conclusions of law the court found that:

1. [Fina] failed to exhaust the administrative remedies available to it under Chapter 41, Property Tax Code.

2. [Fina's] failure to exhaust its administrative remedies deprives this court of jurisdiction to consider [Fina's] cause of action.

## II.

### A. ISSUES ON APPEAL

**Fina's points of error.**

Fina argues three points of error. By its first point, it argues that the court erred in granting the plea to the jurisdiction because neither the chief appraiser nor the Appraisal Review Board had jurisdiction to determine taxable value under the abatement agreement. Under its second point of error, Fina alleges that the court erred because Fina "properly exhausted its [administrative] rem-

---

2. TEX.TAX CODE ANN. § 25.19 (Vernon 1992) notice alluded to in School District's plea to the jurisdiction consisted of a "Notice of Appraised Value for Property Taxes" and was dated May 13, 1991. This notice showed the "Total Appraised Value" of Fina's property for the tax year 1991 to be $263,031,300.00. The notice also contained a column entitled "Exemptions Granted" for 1991. The notice showed the value or amount of the abatement exemption granted to Fina as $61,-441,600.00 which, under the record before us, clearly represents an abatement granted by contract with the school district for Fina's construction of a project known as Fina's "Fuel Products Modernization Project." The notice does not purport to identify the property covered by the exemption but simply shows the total amount of exemptions allowed Fina in respect to its property located within the boundaries of the school district for the year 1991.

edies by protesting [Lampson's] construction of the [Cogen] tax abatement agreement to [School District's] board of trustees and filing this suit."

■ However, in its arguments under these points of error, Fina does attempt to distinguish between the existence or viability of the exemption and its amount, and now argues, citing *Herndon Marine Products v. San Patricio Cty.*, 695 S.W.2d 29 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.), that a taxpayer's failure to take timely action in response to an appraisal district's action not in compliance with code requirements does not bar the taxpayer's suit. Moreover, Fina admits that a taxpayer must protest the chief appraiser's determination that certain property is not exempt before filing suit. *Grand Prairie Hosp. v. Tarrant Appraisal D.*, 707 S.W.2d 281 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

Under the facts, the most significant error specifically asserted by Fina is the one embraced in its third point of error, which alleges that the court erred in dismissing Fina's suit because the Chief Appraiser did not provide Fina sufficient notice. Fina correctly argues under this point that the undisputed evidence shows that Fina's application for the exemption, based on the abatement contract covering the Cogen Project, had been approved by the chief appraiser for the 1991 tax year as submitted.[3]

## B. LAW DISCUSSION

TEX.TAX CODE ANN. § 11.43(h) (Vernon 1992) reads:

If the chief appraiser learns of any reason indicating that an exemption previously allowed should be canceled, he shall investigate. If he determines that the property should not be exempt, he shall cancel the exemption and deliver written notice of the cancellation within five days after the date

he makes the cancellation. (Emphasis added)

School District and Lampson in their reply brief, in response to Fina's point of error three first allege that the trial court correctly dismissed Fina's suit because Fina's complaint that it did not receive proper notice from the appraisal district does not give rise to any action against School District and Lampson. They then argue that their plea to the jurisdiction has nothing whatsoever to do with Fina's contention that the chief appraiser modified or denied the partial exemption. They further allege that the chief appraiser did not deny or modify the exemption, but that is not the issue before us. From this argument, it is clear that School District and Lampson contend that the May 13, 1991 notice to Fina triggered the code provision requiring Fina to file a written protest to any claimed denial or modification to the Appraisal Review Board.

The law question we must decide is whether the May 13, 1991 notice[4] from the appraisal district to Fina required Fina to resort to the exclusive administrative procedures provided by the TEX.TAX CODE ANN. § 42.09 (Vernon 1992).

■ If it did, clearly the court did not err in dismissing the action filed by Fina against the appellees. *Webb County App. D. v. New Laredo Hotel*, 792 S.W.2d 952 (Tex. 1990); *Appraisal Review Board v. International Church of the Foursquare Gospel*, 719 S.W.2d 160 (Tex.1986). However, if the notice provisions of section 11.43(h) specifically applying to the cancellation of a partial exemption created by an abatement agreement or contract between a property owner and a taxing unit are not complied with by the chief appraiser of an appraisal district, what are those consequences? We hold that where a partial exemption is canceled by the chief appraiser as here and the chief appraiser fails to give notice of his action canceling the

---

3. See Plaintiff's Exhibit 3 introduced at the hearing of the plea. Such exhibit is a letter dated April 24, 1991 from the Chief Appraiser to Alan Kell, Fina's Ad Valorem Tax Manager, acknowledging receipt of Fina's application for property tax abatement exemption covering the Cogen Project and the Fuel Products Modernization Unit.

4. This evidence was introduced as a part of Defendants' Exhibit 1 (designated as Exhibit B therein) at the January 7 hearing of appellant's plea to the jurisdiction.

same within five days after the date he makes the cancellation, the property owner is not barred from prosecuting a suit against the taxing unit that contracted for the exemption by way of a tax abatement agreement. In so holding, we must recognize, that under the statutory scheme adopted by the legislature in its enactment of the Texas Tax Code, that there is a substantial difference between an appraisal of property and a cancellation of a negotiated abatement of taxes under Chapter 11 of the code. Moreover, we point out that the cancellation of this contractual abatement of taxes for future years may be based on several grounds, including delinquent taxes and non-related breaches of the abatement contract by the property owner. Additionally, we conclude that under section 11.43(h), the chief appraiser is under a duty to notify the property owner of the reason for the cancellation of an abatement of taxes agreement so that a proper protest, if required, can be made by the property owner to the Appraisal Review Board. Here, not only is the so-called notice bereft of any identifying language showing the particular exemption that purports to be disallowed, it does not set forth any reason for the cancellation of the exemption. Certainly such notice on appraised value does no more than fix the approved market value of the taxable property of Fina. If the code is to be strictly enforced, as seems to be the case, then the appraisal district and their officers and employees, as well as the property owner, should be held by the law to the same strict standards; otherwise, the entire legislative purpose and intent will be truly destroyed.

For all of the above reasons, we sustain Fina's point of error number three, reverse the dismissal judgment and remand the case for trial on the merits.

REVERSED AND REMANDED.